J-A15039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER PUMA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MILLERSVILLE MUTUAL INSURANCE | : | No. 1062 MDA 2024 |
| COMPANY | : | |

Appeal from the Order Entered July 3, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2021-12639

| | | |
|---|---|---|
| CHRISTOPHER PUMA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MILLERSVILLE MUTUAL INSURANCE | : | No. 1673 MDA 2024 |
| COMPANY | : | |

Appeal from the Judgment Entered December 16, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2021-12639

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: AUGUST 29, 2025**

In these consolidated appeals, Christopher Puma appeals from the

December 16, 2024 judgment on the entry of nonsuit in favor of Appellee,

_____

[*] Former Justice specially assigned to the Superior Court.

Millville Mutual Insurance Company (hereinafter "Millville").[1]  After careful review, we affirm.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows:  On July 7, 2021, an exterior portion of Appellant's residence was struck by a motor vehicle.  Millville was the insurer of Appellant's residence at the time of the accident.  Appellant submitted a claim to Millville under his policy. The policy limit for property damage to the entire structure was $50,000.  For seven weeks following the submission of the claim, Appellant failed to provide Millville with a repair estimate as requested by Millville and required by his policy.  On August 13, 2021, Millville engaged Edward B. Gieda Jr., an independent adjuster, to inspect the property damage caused by the vehicle impact so as to facilitate payment under the policy.  Gieda inspected the structure and on September 10, 2021, furnished

---

[1] Appellant's appeals at Nos. 1062 MDA 2024 and 1673 MDA 2024 were consolidated by **per curiam** order of this Court on January 10, 2025. Appellant purported to appeal from the trial court's July 3, 2024 order finding him in contempt for his repeated discovery violations and his violation of the trial court's February 1, 2024 sanctions order; the August 7, 2024 order granting the motion for nonsuit filed by Millville; and the October 9, 2024 order denying his post-trial motion to remove and/or strike the entry of nonsuit in favor of Millville.  This Court has long recognized, however, that "in a case where nonsuit was entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit." **Billig v. Skvarla**, 853 A.2d 1042, 1048 (Pa.Super. 2004).  A review of the trial court docket reveals that final judgment on the entry of nonsuit was ultimately entered in this matter on December 16, 2024.

a repair estimate of $20,616.23. Thereafter, Appellant provided Millville with a one-page document prepared by Gene Kocher of Kocher Construction, generally proclaiming that the repairs would cost $72,428.89. Millville then offered to pay Appellant $12,900.55 — that is, the full value of estimate less 35% depreciation ($7,215.68) and the policy deductible ($500.00) — and holding back the depreciation amount until after the insured provides proof that the repairs were effectuated, under the terms of the policy. Appellant refused the $12,900.55 payment, and on December 27, 2021, filed suit against Millville on the basis that its damage valuation was inaccurate and improper.

During the course of discovery, Appellant was found in contempt of the trial court's sanctions order following his repeated failure to comply with Millville's discovery requests during the court-mandated discovery period. On July 3, 2024, the trial court ordered Appellant to pay $4,333.00 for reasonable attorneys' fees incurred by Millville due to Appellant's failure to comply with the court's sanctions order.

The trial court summarized the pertinent procedural history which led to this finding of contempt as follows:

> During the discovery period, on December 8, 2022, [Millville] filed a Motion to Compel Discovery Responses. The Motion to Compel Discovery Responses was granted after an evidentiary hearing and [Appellant] was ordered to produce responses to [Millville's] First Requests for Admission, Interrogatories, and Requests for Production of Documents within twenty (20) days.

Millville next filed a Motion to Compel Discovery Responses and for Leave To Take Depositions Outside of the Discovery Period on January 25, 2023. After oral argument, an Order was entered granting the requested relief and directed the deposition of [Appellant] to occur within thirty (30) days and expert depositions to occur within sixty (60) days of March 31, 2023.

On March 15, 2023, [Millville] again filed a Motion for Discovery Sanctions in that the depositions did not occur pursuant to the Order of January 25, 2023. The motion was supplemented with additional averments on June 6, 0223. [Appellant] filed a Brief in Opposition to the Motion for Sanctions on June 12, 2023 and a hearing was conducted on June 12, 2023. The matter was held in abeyance pending other motions.

On December 29, 2023, after ruling on all other matters, the Motion for Discovery Sanctions was granted based on the hearing conducted on June 12, 2023 and the Court again compelled the depositions of [Appellant] and [Appellant's] expert. The Order directed the depositions of Christopher Puma and Eugene Kocher to occur within forty-five (45) days or by February 13, 2024. [Appellant's] Counsel was directed to provide three available dates for each deposition within ten (10) days or by January 8, 2024. [Appellant] was sanctioned to pay reasonable counsel fees of [Millville] in pursuing the depositions as Ordered on March 8, 2023 and by Order dated March 31, 2023.

During the June 12, 2023 hearing on [Millville's] Motion for Discovery Sanctions, [Millville] produced multiple correspondences in support of his attempts to schedule the depositions in accordance with the March 31, 2023 Order. [Appellant] provided minimal responses to the requests. [Appellant] then proposed that the depositions be conducted virtually on the weekend. [Millville] attempted to accommodate [Appellant's] request for virtual weekend depositions, however [Appellant] retracted the request for virtual

> depositions after several weeks claiming that [he] did not have Zoom capabilities.
>
> . . . .
>
> On December 29, 2023, the Court entered an Order sanctioning [Appellant] and directed [Millville] to submit a detailed counsel fees statement. On January 18, 2024, [Appellant] provide the statement of counsel fees. After review of the fees submitted, on February 1, 2024, an order was issued directing [Appellant] to pay … [$3,800.00] in reasonable fees and costs within sixty (60) days.
>
> [Appellant sought reconsideration of the Sanctions Order on March 4, 2024, which was denied on March 6, 2024. [Appellant] did not provide the ordered payment.
>
> On April 22, 2024, [Appellant] filed a Motion for Contempt and for Sanctions. An evidentiary hearing was scheduled for July 1, 2024 and [Appellant] was ordered to appear.

Trial court opinion, 11/6/24 at 1-3 (internal citations, emphasis, parentheticals, and footnote omitted).

As noted, following the July 1, 2024 evidentiary hearing, the trial court found Appellant in contempt of its sanctions order and ordered him to pay $4,333.00. *See* Contempt Order, 7/3/24. Appellant filed a notice of appeal from the trial court's July 3, 2024 contempt order on July 23, 2024, which was docketed at No. 1062 MDA 2024.

Thereafter, on July 30, 2024, the trial court entered an order giving notice to all parties that Appellant's notice of appeal does not preclude the jury trial on the merits from proceeding as scheduled and set trial date for

August 7, 2024. After Appellant and his counsel failed to appear at the scheduled jury trial, Millville moved for the entry of a nonsuit pursuant to Pa.R.C.P. 218(a), which was granted by the trial court that same day. On August 19, 2024, Appellant filed a motion for post-trial relief to remove and strike judgment of nonsuit pursuant to Pa.R.C.P. 227.1 and 230.1. The trial court denied Appellant's motion for post-trial relief on October 9, 2024.

On November 8, 2024, Appellant filed a notice of appeal from the trial court's August 7, 2024 order granting the motion for nonsuit filed by Millville; and the October 9, 2024 order denying his post-trial motion to remove and/or strike the entry of nonsuit in favor of Millville. This appeal was docketed at No. 1673 MDA 2024.

The record reflects that at the time Appellant filed his notices of appeal, there was no judgment on the entry of nonsuit on the docket. Accordingly, we remanded the case and directed Appellant to **praecipe** the Prothonotary to enter judgment on the entry of nonsuit and to file with this Court a certified copy of the trial court docket reflecting the entry of judgment within fourteen days. **See Per Curiam** order, 12/12/24. Appellant timely complied and final judgment on the entry of nonsuit was entered in this matter on December 16, 2024. We therefore treat this appeal as timely. **See** Pa.R.A.P. 905(a)(5) (stating, "[a] notice of appeal filed after the announcement of a determination

but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").[2]

Appellant raises the following 16 interrelated issues for our review:

1.  Whether the [trial court] committed an error of law and abuse of discretion in its finding [Appellant] in contempt of court by order dated July 3, 2024?

2.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find [Appellant's] failure to comply with or respond to the court order was not intentional nor a product of inadvertence?

3.  Whether the [trial court] committed an error of law and abuse of discretion as the court's decision was based on insufficient evidence that [Appellant]'s act in not complying with the order was volitional; and that [Appellant] acted with wrong intent?

4.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find that due to circumstances beyond [Appellant's] control, [he] was unable to comply with the court's order?

5.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find that [Appellant] presented sufficient evidence to support his defenses to the contempt citation, which were not groundless, meritless or put forth in bad faith?

_____

[2] Appellant and the trial court have complied with Pa.R.A.P. 1925. Notably, the trial court filed a comprehensive, 12-page opinion in support of its decision finding Appellant in contempt on November 6, 2024. Thereafter, on January 31, 2025, the trial court filed an additional, 13-page opinion in support of its decision to deny Appellant's post-trial motion to remove and strike the entry of nonsuit in favor of Millville.

- 7 -

6. Whether the [trial court] committed an error of law and abuse of discretion in failing to find that [Appellant's] actions did not constitute a willful failure to comply with any order of the [trial court]?

7. Whether the [trial court] committed an error of law and abuse of discretion in failing to find that [Appellant's] actions or failures to act were not contemptuous behavior?

8. Whether the trial court erred in its finding of contempt in that the complaining party, which has the burden of proving by a preponderance of evidence that [Appellant] violated a court order, did not meet such burden?

9. Whether the [trial court] committed an error of law and abuse of discretion in failing to find that to impose civil contempt, the trial court was convinced beyond a reasonable doubt from the totality of evidence presented, that [Appellant] had the present ability to comply with the court's order?

10. Whether the [trial court] committed an error of law and abuse of discretion in failing to consider mitigating circumstances?

11. [Whether b]ased upon the facts and circumstances of this matter, whether the [trial] court committed an error of law and abuse of discretion in the trial court's finding that [Appellant] was in contempt of court and its imposition of sanctions were both unreasonable and excessive?

12. Whether the [trial court] committed an error of law and abuse of discretion in the court's grant of [Appellee's] motion for nonsuit pursuant to Pa.R.Civ.P. 218(a) and in its denial of [Appellant's] post-trial motion to remove and strike the judgment of non-suit?

13.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find that on July 23, 2024 [Appellant] filed of record a notice of appeal to the Pennsylvania Superior Court from the court's order finding [Appellant] in contempt of court by order dated July 3, 2024, which had been entered of record with the Prothonotary in this court's docket entry sheet in the above-captioned matter and that therefore, pursuant to 210 Pa.Code Rule 1701(a), after the appeal was taken the trial court could no longer proceed further in the matter?

14.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find the appealability of the court's July 3, 2024 order directly impacted the jurisdiction of the Superior Court and in failing to find that the Court of Common Pleas order did not have jurisdiction to grant [Appellee's] motion for non-suit?

15.  Whether the [trial court] committed an error of law and abuse of discretion in failing to find that upon [Appellant's] filing of a notice of appeal, the Court of Common Pleas did not have jurisdiction and the trial court was no longer authorized to proceed further in the matter until it was resolved on appeal?

16.  Whether the [trial court's] decision was contrary to law?

Appellant's brief at 4-8 (numeration added).

This Court has explained our standard of review for a civil contempt order as follows:

When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, our scope of review is narrow: we will reverse

- 9 -

only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason.

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009) (citations omitted).

Likewise, our standard of review of a trial court's grant of a compulsory non-suit is well-settled:

A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury.

When we review the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered. A compulsory nonsuit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff.

*Gregury v. Greguras*, 196 A.3d 619, 625 (Pa.Super. 2018) (citations and internal quotation marks omitted), *appeal denied*, 205 A.3d 1230 (Pa 2019).

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned analysis of the trial court, it is our determination that Appellant's claims on appeal warrant no relief. The trial court's duel Rule 1925(a) opinions comprehensively discussed and disposed of Appellant's plethora of intertwined issues, concluding that they

- 10 -

were without merit. We find that the conclusions of the trial court are supported by competent evidence and are free of legal error.

Specifically, we agree with the trial court that its contempt finding was warranted given that the record clearly establishes Appellant's multiple discovery violations and his intentional disobedience and disregard for its February 1, 2024 sanctions order. We further agree with the trial court that the record demonstrates that Appellant was not credible in his averments regarding non-payment of sanctions (counsel fees); and that Appellant and his counsel consciously and deliberately failed to appear for the August 7, 2024 jury trial in defiance of the trial court's multiple notices and orders that the trial was taking place as scheduled. We also agree with the trial court that Appellant's appeal of the July 3, 2024 contempt order did not divest the trial court of jurisdiction and did not operate as an automatic stay of the proceedings. We find that the trial court properly concluded that it had jurisdiction to preside over the August 7, 2024 jury trial in this matter and it properly exercised its jurisdiction in entering nonsuit following Appellant and his counsel's failure to appear. *See* trial court opinion, 11/6/24 at 6-12; trial court opinion, 1/31/25 at 7-13.

Accordingly, we adopt the comprehensive November 6, 2024 and January 31, 2025 opinions of the Honorable Tina Polachek Gartley as our own for purposes of this appellate review. The parties are instructed to attach the opinions of the trial court in any filings referencing this Court's decision.

Order and Judgment affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/29/2025

IN THE COURT OF COMMON PLEAS

OF LUZERNE COUNTY

| | | |
|---|---|---|
| CHRISTOPHER PUMA, | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 2021-12639 |
| | : | |
| MILLVILLE MUTUAL INSURANCE COMPANY, | : | |
| Defendant | : | |

## OPINION

This Opinion is furnished pursuant to the requirements of Pennsylvania Rule of Appellate Procedure No. 1925(a).

On July 3, 2024 the Court granted the Defendant, Millville Mutual Insurance Company's, *Motion for Contempt and for Sanctions.* Plaintiff filed a "*Notice of Appeal*" on July 23, 202 and pursuant to the Order of August 2, 2024, Plaintiff filed a "*Concise Statement of Matters Complained of on Appeal*" on August 22, 2024.

**Background and Procedural History**

The instant action was initiated on December 27, 2021 by the filing of a Complaint. During the discovery period, on December 8, 2022, Defendant filed a *Motion to Compel Discovery Responses.* (*See* Docket, *generally*). The *Motion to Compel Discovery Responses* was granted after an evidentiary hearing and Plaintiff was ordered to produce responses to Defendant's First Requests for Admission, Interrogatories, and Requests for Production of Documents within twenty (20) days. (A copy of the Order dated December 21, 2022 is attached hereto).

**APPENDIX "B"**

Defendant next filed a *Motion to Compel Discovery Responses and for Leave To Take Depositions Outside of the Discovery Period* on January 25, 2023. After oral argument, an Order was entered granting the requested relief and directed the deposition of Plaintiff to occur within thirty (30) days and expert depositions to occur within sixty (60) days of March 31, 2023. (A copy of the Order dated March 31, 2023, is attached hereto).

On March 15, 2023, Defendant again filed a *Motion for Discovery Sanctions* in that the depositions did not occur pursuant to the Order of January 25, 2023. The motion was supplemented with additional averments on June 6, 2023 (*See* Docket, *generally*). Plaintiff filed a Brief in Opposition to the Motion for Sanctions on June 12, 2023 (*See* Docket, *generally*) and a hearing was conducted on June 12, 2023. The matter was held in abeyance pending other motions. (*See* Order dated September 20, 2023).

On December 29, 2023, after ruling on all other matters, the *Motion for Discovery Sanctions* was granted based on the hearing conducted on June 12, 2023 and the Court again compelled the depositions of Plaintiff and Plaintiff's expert. The Order directed the depositions of Christopher Puma and Eugene Kocher to occur within forty-five (45) days or by February 13, 2024. Plaintiff's Counsel was directed to provide three available dates for each deposition within ten (10) days or by January 8, 2024. Plaintiff was sanctioned to pay reasonable counsel fees of the Defendant in pursuing the depositions as Ordered on March 8, 2023 and by Order dated March 31, 2023. (*See* December 29, 2023 Order (the "Sanctions Order").

During the June 12, 2023 hearing on the *Defendant's Motion for Discovery Sanctions*, Defendant produced multiple correspondences in support of his attempts to schedule the depositions in accordance with the March 31, 2023 Order. Plaintiff provided

2

minimal responses to the requests. The Plaintiff then proposed that the depositions be conducted virtually on a weekend. Defendant attempted to accommodate Plaintiff's request for virtual weekend depositions, however Plaintiff, retracted the request for virtual depositions after several weeks claiming that the Plaintiff did not have Zoom capabilities. It is noted that the request for the virtual depositions was made by the Plaintiff for the Plaintiff's deposition. Despite this, Plaintiff then informed the Defendant that his clients did not have ZOOM capabilities and needed to schedule the depositions live. (*See* the Sanctions Order, *generally*).

On December 29, 2023, the Court entered an Order sanctioning the Plaintiff and directed Defendant to submit a detailed counsel fees statement. (*See* Id.). On January 18, 2024, Defendant provided the statement of counsel fees. After review of the fees submitted, on February 1, 2024, an order was issued directing the Plaintiff to pay three thousand eight hundred thirty ($3,830.00) dollars in reasonable fees and costs within sixty (60) days (*See* February 1, 2024 Order attached hereto).

Plaintiff sought reconsideration of the Sanctions Order on March 4, 2024, which was denied on March 6, 2024. (A copy of the Order is attached hereto).[1] The Plaintiff did not provide the ordered payment.

On April 22, 2024, the Defendant filed a *Motion for Contempt and for Sanctions*. (*See* *Defendant's Motion for Contempt and For Sanctions, generally*). An evidentiary hearing was scheduled for July 1, 2024 and the Plaintiff was ordered to appear.

---

[1] The Motion for Reconsideration did not include any averments as to the inability to pay.

3

## July 1, 2024, Evidentiary Hearing

At the hearing, the Defendant argued that the February 1, 2024 Order was clear and there was no ambiguity or grey area. The order provided sixty days for payment and "a penny was never paid". (N.T. p. 4). The Plaintiff, Christopher Puma, testified that he was able to pay the attorney's fees but chose not to pay noting he owns multiple residential property rental units, a used car business, and his own personal home. (N.T. pp. 6-8). Plaintiff testified that his used car lot was not performing well, however produced no evidence of car sales or income other than claiming he sold a few cars last years, or any other evidence to substantiate his slow business. (N.T. p. 14). Plaintiff testified that his rental property tenants were behind on rent, however produced no evidence of the rental properties being in arrears on rent, no evidence of vacancy of the rental properties, nor any evidence of an attempt to sell the rental properties. (N.T. p. 13). Plaintiff testified that he does not work and failed to produce any evidence of attempts to gain employment. (N.T. p. 14). Further, Plaintiff produced no evidence of an inability to work or pay. (N.T. p. 14). Based on his testimony and complete lack of evidence to support any of his averments, the Court did not find Plaintiff credible.

The Court found Plaintiff to be in contempt of the Sanctions Order, Ordered Plaintiff to pay the outstanding three thousand eight hundred thirty ($3,830.00) dollars sanction and an additional five hundred ($500.00) dollars. (*See* July 3, 2024 Order (the "Contempt Order").

On July 23, 2024, Plaintiff filed a "Notice of Appeal" to the Contempt Order. It is in support of that Order, in which this Opinion is furnished.

4

The Defendants filed twelve issues, several of which are substantially the same analysis. The issues shall be addressed as follows:

1. The finding of Christopher Puma in Contempt of Court by Order dated July 3, 2024 was both legally erroneous and an abuse of discretion.

2. The trial court erred in failing to find that Christopher Puma's failure to comply with or respond to the Court Order was not intentional nor a product of inadvertence.

3. The trial court erred as a matter of law and/or abused its discretion, as the Court's decision was based on insufficient evidence that Christopher Puma's act in not complying with the order was volitional; and that Christopher Puma acted with wrong intent.

4. The trial court erred in failing to find that due to circumstances beyond the Defendant's control, Christopher Puma was unable to comply with the Court's Order.

5. The trial court erred in failing to find that Christopher Puma presented sufficient evidence to support his defenses to the contempt citation, which were not groundless, meritless or put forth in bad faith.

6. The trial court erred in failing to find that Christopher Puma's actions did not constitute a willful failure to comply with any Order of this Court.

7. The trial court erred in failing to find that Christopher Puma's actions or failures to act were not contemptuous behavior.

8. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. The trial court erred in that the complaining party, which had the burden of proving by a preponderance of evidence that Christopher Puma violated a court order, was not met.

9. The trial court erred in failing to find that to impose civil contempt the trial court was convinced beyond a reasonable doubt from the totality of evidence presented, that Christopher Puma had the present ability to comply with the court's order.

10. The trial court erred in failing to consider mitigating circumstances.

11. Based upon the facts and circumstances of this matter, the trial court's finding that Christopher Puma was in contempt of court and its imposition of sanctions were both unreasonable and excessive.

12. The Defendant/Appellant has not yet received the lower Court's Opinion supporting its contempt finding nor the complete Court Transcripts in this case concerning the contempt proceedings. As the Appellant requires the Transcripts of the proceedings held in this matter, the undersigned requests leave of court to supplement this PA. R.A.P. 1925 (b) Statement until such time after the remaining transcripts are received.

## Discussion

1. **The finding of Christopher Puma in Contempt of Court by Order dated July 3, 2024 was both legally erroneous and an abuse of discretion.**

The first question at issue is whether, "[t]he finding of Christopher Puma in Contempt of Court by Order dated July 3, 2024 was both legally erroneous and an abuse of discretion." Appellate review of a finding of contempt is governed by a clear abuse of discretion status. Sinaiko v. Sinaiko, 664 A.2d 1005, 1009 (Pa. Super. 1995). To sustain a finding of civil contempt, the following distinct elements must be proven: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. Id. (citing Marian Shop, Inc. v. Baird, 670 A.2d 671, 673 (Pa. Super. 1996). Contempt can be proven via intentional disobedience or intentional disregard for the lawful process of the court. Ricci v. Geary, 670 A.2d 190, 192

6

(Pa. Super. 1996). The imposition of counsel fees can serve as a sanction upon a finding of civil contempt. Sutch v. Roxborough Mem'l Hosp.,142 A.3d 38, 68 (Pa. Super. 2016).

When reviewing an order of contempt, the appellate court places great reliance on the discretion of the trial court. In re Est. of Tomcik, 286 A.3d 748, 764 (Pa. Super. 2022), reargument denied (Jan. 19, 2023), appeal denied sub nom. In re Tomcik, 299 A.3d 866 (Pa. 2023). Further, when reviewing under an abuse of discretion standard, if there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, the decision will not be disturbed and there is no abuse of discretion. Id. at 766.

The Court held an evidentiary matter, wherein it heard testimony on the Motion of Contempt and Sanctions. (See Docket). As fully set forth herein, the record is clear on Plaintiff's intentional disobedience and intentional disregard for the Court's sanction order. The Plaintiff was not found to be credible in his averments regarding his non-payment of sanctions, and to the alternative, affirmed that he was in fact able to pay the sanctions as ordered but chose to disregard it.

Issues two, three, and six shall be address together.

2. **The trial court erred in failing to find that Christopher Puma's failure to comply with or respond to the Court Order was not intentional nor a product of inadvertence.**

3. **The trial court erred as a matter of law and/or abused its discretion, as the Court's decision was based on insufficient evidence that Christopher Puma's act in not complying with the order was volitional; and that Christopher Puma acted with wrong intent.**

6. **The trial court erred in failing to find that Christopher Puma's actions did not constitute a willful failure to comply with any Order of this Court.**

7

Questions at issue numbers two, three, and six are all related to Plaintiff's contemptuous acts being intentional, volitional, and willful, and will be addressed together.

As set forth in the background and procedural history, there has been a continual delay, blatant disregard, and noncompliance in partaking in discovery, and after a hearing, the delays were found to be the fault of the Plaintiff. Due to Plaintiff's continual delay and disregard of the Court's orders that compelled discovery responses and depositions, Plaintiff was sanctioned in the form of monetary counsel fees that Defendant incurred throughout the discovery period to compel Plaintiff's participation and enforce compliance with the Court's orders. Plaintiff testified in the affirmative that he understood the discovery process, and the effect on Defendants for Plaintiff's failure to abide by the court orders and associated costs incurred. (N.T. pp 9-11).

Despite being ordered by the Court to pay the monetary sanctions, Plaintiff again knowingly chose not to abide by the Court's order and pay the sanction. Defendant argued, "[w]e illustrated that the Plaintiff has violated almost every Court Order or deadline that has existed in this case." (N.T. p. 4). This Court found Plaintiff in contempt of court, after an evidentiary hearing wherein Plaintiff testified which showed a blatant disregard of the Court's Orders and lawful process, which was found to be intentional, volitional, and willful.

Issues four, five, nine, and ten are similar and shall be heard together.

4. **The trial court erred in failing to find that due to circumstances beyond the Defendant's control, Christopher Puma was unable to comply with the Court's Order.**

5. **The trial court erred in failing to find that Christopher Puma presented sufficient evidence to support his defenses to the contempt citation, which were not groundless, meritless or put forth in bad faith.**

8

9. The trial court erred in failing to find that to impose civil contempt the trial court was convinced beyond a reasonable doubt from the totality of evidence presented, that Christopher Puma had the present ability to comply with the court's order.

10. The trial court erred in failing to consider mitigating circumstances.

Questions at issue numbered four, five, nine, and ten all relate to Plaintiff's ability to pay the ordered sanctions and will be addressed together. Plaintiff's ability to pay the ordered sanctions was thoroughly analyzed and inquired to at the evidentiary hearing.

The Plaintiff, Christopher Puma, explicitly testified that he was able to pay the attorney's fees that were ordered. (N.T. p. 6). Plaintiff could pay the sanctions, but chose not to pay noting he owns multiple residential property rental units, a used car business, and his own personal home. (N.T. pp. 6-8). Plaintiff testified that his used car lot was not performing well, however produced no evidence of car sales or income other than claiming he sold a few cars last year, or any other evidence to substantiate his slow business. (N.T. p. 14). Plaintiff testified that his rental property tenants were behind on rent, however produced no evidence of the rental properties being in arrears on rent, no evidence of vacancy of the rental properties, nor any evidence of an attempt to sell the rental properties. (N.T. p. 13). Plaintiff testified that he does not work and failed to produce any evidence of attempts to gain employment. (N.T. p. 14). Further, Plaintiff produced no evidence of an inability to pay. (N.T. p. 14). Plaintiff further produced no evidence of attempting to make any payment to Defendants in an attempt to satisfy any part of the sanctions order. It was not until the hearing on contempt where the Plaintiff stated, "[a]ctually, I can give [Defendants] a hundred dollars today." (N.T. p. 9). Based on his testimony and complete

9

lack of evidence to support any of his alleged mitigating circumstances, the Court did not find Plaintiff credible.

Issues eight and eleven are addressed as follows:

8. **To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. The trial court erred in that the complaining party, which had the burden of proving by a preponderance of evidence that Christopher Puma violated a court order, was not met.**

11. **Based upon the facts and circumstances of this matter, the trial court's finding that Christopher Puma was in contempt of court and its imposition of sanctions were both unreasonable and excessive.**

Questions at issue eight and eleven are related and will be addressed together. Proceedings to enforce compliance with a decree of court are civil in nature. Lachat v. Hinchcliffe, 769 A.2d 481, 488 (Pa. Super. 2001). To sustain a finding of civil contempt, the following distinct elements must be proven: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent. Id. (citing Marian Shop, Inc. v. Baird, 670 A.2d 671, 673 (Pa. Super. 1996). Contempt can be proven via intentional disobedience or intentional disregard for the lawful process of the court. Ricci v. Geary, 670 A.2d 190, 192 (Pa. Super. 1996). The imposition of counsel fees can serve as a sanction upon a finding of civil contempt. Sutch v. Roxborough Mem'l Hosp.,142 A.3d 38, 68 (Pa. Super. 2016)

The instant contempt decree is civil in nature for the purpose of enforcing compliance with virtually all the Court's previous orders. The specific decrees in which the

10

contempt finding derives from was this Court's December 29, 2023, Order granting Defendant's Motion for Discovery Sanctions, followed by the February 1, 2024 Order setting the sanction in the monetary amount of three thousand eight hundred thirty ($3,830.00) dollars. (*See* December 29, 2023 Order and February 1, 2024 Order). The violated order that led to contemptuous behavior was clear and free of ambiguities. It was Ordered to pay reasonable counsel fees and costs in the amount of three thousand eight hundred thirty ($3,830.00) dollars within sixty days of the date of the Order, due to Plaintiff's failure to abide by previous Orders compelling discovery depositions. (*See* December 29, 2023 Order and February 1, 2024 Order). The three thousand eight hundred thirty ($3,830.00) dollars represented reasonable counsel fees and costs, after the Court reviewed a fee statement provided by Defendants. (*See* December 29, 2023 Order and February 1, 2024 Order). The three thousand eight hundred thirty ($3.830.00) dollars sanction in reasonable counsel fees was considerably less than the fees sought by Defendants, as noted by Defendants in their argument at the contempt hearing. (N.T. p. 5).

As discussed fully above, the Court found Plaintiff's acts to be intentional, volitional, and willful through his intentional disobedience and disregard of the Court's orders. The Plaintiff testified that while he was able to pay the three thousand eight hundred thirty ($3,830.00) dollars sanction as the Court ordered, he "preferred not to." (*See* N.T. pp. 6; 9). Plaintiff was made fully aware of the basis for the orders to compel discovery and depositions, the orders for sanctions for failure to abide by those orders. (*See* N.T. pp. 12-16). Plaintiff acted with an intentional disregard and intentional disobedience of this Court's Order. The order of contempt was the result of multiple orders being intentionally disregarded and purposely disobeyed. Defendants have incurred substantial fees and

11

costs due to the contumacious behavior of Plaintiff. As such, the Court found Defendant to

have met all required elements for a finding of civil contempt of court.

> **12. The Defendant/Appellant has not yet received the lower Court's Opinion supporting its contempt finding nor the complete Court Transcripts in this case concerning the contempt proceedings. As the Appellant requires the Transcripts of the proceedings held in this matter, the undersigned requests leave of court to supplement this PA. R.A.P. 1925 (b) Statement until such time after the remaining transcripts are received.**

Finally, in response to the question in issue number twelve, this Opinion is issued

in response to Plaintiff's matters complained of on appeal and upon the transcript furnished

from the July 1, 2024 contempt hearing.

**End of Opinion**

IN THE COURT OF COMMON PLEAS

OF LUZERNE COUNTY

| | | |
|---|---|---|
| CHRISTOPHER PUMA, | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 2021-12639 |
| MILLVILLE MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Defendant | : | |

## OPINION

This Opinion is furnished pursuant to the requirements of Pennsylvania Rule of Appellate Procedure No. 1925(a).

On August 7, 2024, the trial court granted the Defendant, Millville Mutual Insurance Company's, *Motion for Nonsuit*. Plaintiff filed a *"Motion for Post Trial Relief To Remove and Strike the Judgment of Non-Suit Pursuant to Pa.R.Civ.P. 227.1 and 230.1"* on August 19, 2024. On October 10, 2024, the trial court denied Plaintiff's Motion for Post Trial Relief. Plaintiff filed his *"Notice of Appeal"* to the Superior Court on November 8, 2024, and pursuant to the Order of November 8, 2024, Plaintiff filed a *"Concise Statement of Matters Complained of on Appeal"* on December 2, 2024.

**Background and Procedural History**

The instant action was initiated on December 27, 2021, by the filing of a six (6) count Complaint. The Defendant filed Preliminary Objections, and after consideration of briefs filed by the parties and oral argument, the preliminary objections in the form of demurrers were sustained as to counts IV, V, and VI, and further the claim for attorney fees

and costs were stricken from Count I. (*See* Docket, *generally*). As such, three (3) claims remained for Breach of Contract, Statutory Bad Faith, and Fraud and Misrepresentation. (*See* Docket, *generally*). The trial court then issued a Scheduling Order, wherein all the case deadlines were clearly laid out. (*See* Docket, *generally*).

During the discovery period, on December 8, 2022, Defendant filed a *Motion to Compel Discovery Responses*. (*See* Docket, *generally*). The *Motion to Compel Discovery Responses* was granted after an evidentiary hearing and Plaintiff was ordered to produce responses to Defendant's First Requests for Admission, Interrogatories, and Requests for Production of Documents within twenty (20) days. (*See* Docket, *generally*).

The Defendant next filed a *Motion to Compel Discovery Responses and for Leave To Take Depositions Outside of the Discovery Period* on January 25, 2023. After oral argument, an Order was entered granting the requested relief and directed the deposition of Plaintiff to occur within thirty (30) days and expert depositions to occur within sixty (60) days of March 31, 2023. (*See* Docket, *generally*).

On March 15, 2023, Defendant again filed a *Motion for Discovery Sanctions* in that the depositions did not occur pursuant to the Order of January 25, 2023. The motion was supplemented with additional averments on June 6, 2023 (*See* Docket, *generally*). Plaintiff filed a Brief in Opposition to the Motion for Sanctions on June 12, 2023 (*See* Docket, *generally*) and a hearing was conducted on June 12, 2023. The matter was held in abeyance pending other motions. (*See* Order dated September 20, 2023).

On December 29, 2023, after ruling on all other matters, the *Motion for Discovery Sanctions* was granted based on the hearing conducted on June 12, 2023, and the trial court again compelled the depositions of Plaintiff and Plaintiff's expert. The Order directed

2

the depositions of Christopher Puma and Eugene Kocher to occur within forty-five (45) days or by February 13, 2024. Plaintiff's was directed to provide three available dates for each deposition within ten (10) days or by January 8, 2024. (*See* Docket, *generally*). Plaintiff was sanctioned to pay reasonable counsel fees of the Defendant in pursuing the depositions as Ordered on March 8, 2023, and by Order dated March 31, 2023. (*See* Docket, *generally*).

During the June 12, 2023, hearing on the *Defendant's Motion for Discovery Sanctions*, Defendant produced multiple correspondences in support of his attempts to schedule the depositions in accordance with the March 31, 2023 Order. Plaintiff provided minimal responses to the requests. The Plaintiff then proposed that the depositions be conducted virtually on a weekend. Defendant attempted to accommodate Plaintiff's request for virtual weekend depositions, however Plaintiff, retracted the request for virtual depositions after several weeks claiming that the Plaintiff did not have Zoom capabilities. It is noted that the request for the virtual depositions was made by the Plaintiff for the Plaintiff's deposition. Despite this, Plaintiff then informed the Defendant that his clients did not have ZOOM capabilities and needed to schedule the depositions live. (*See* Docket, *generally*).

On December 29, 2023, the trial court entered an Order sanctioning the Plaintiff and directed Defendant to submit a detailed counsel fees statement. (*See* Docket, *generally*). On January 18, 2024, Defendant provided the statement of counsel fees. After review of the fees submitted, on February 1, 2024, an order was issued directing the Plaintiff to pay three thousand eight hundred thirty ($3,830.00) dollars in reasonable fees and costs within sixty (60) days (*See* Docket, *generally*).

3

Plaintiff sought reconsideration of the Sanctions Order on March 4, 2024, which was denied on March 6, 2024. (*See* Docket, *generally*). The Plaintiff did not provide the ordered payment.

On April 5, 2024, the trial court issued a Jury Trial Order, setting out all deadlines for jury document submissions and scheduling a Final Pre-Trial Conference for July 29, 2024. (*See* Docket, *generally*).

On April 22, 2024, the Defendant filed a *Motion for Contempt and for Sanctions*. (*See* Docket, *generally*). An evidentiary hearing was scheduled for July 1, 2024 and the Plaintiff was ordered to appear. The trial court found Plaintiff to be in contempt of the Sanctions Order, Ordered Plaintiff to pay the outstanding three thousand eight hundred thirty ($3,830.00) dollars sanction and an additional five hundred ($500.00) dollars. (*See* Docket, *generally*). On July 23, 2024, Plaintiff filed a "Notice of Appeal" to the Contempt Order. (*See* Docket, *generally*).

On July 24, 2024, the Defendant filed several Motions in Limine for the upcoming jury trial. (*See* Docket, *generally*). Upon receipt of correspondence from the trial court's chambers to all counsel, which indicated that the pending Motions in Limine will be addressed during the scheduled Final Pre-Trial Conference on July 29, 2024, Plaintiff filed a "Response and Objection of Christopher Puma to the Presume Order of Court Received on July 27, 2024." (*See* Docket, *generally*). In Plaintiff's Response and Objection, Plaintiff asserts there was an "unreceived" Order of Court, referring to the scheduled the pre-trial conference, and further asserts due to his Notice of Appeal to the Contempt Order, the trial court no longer has jurisdiction, and the trial court may not proceed in the matter. (*See*

Docket, *generally*). Defendant continued to submit and file of record all of their jury trial submissions pursuant to the Jury Trial Order. (*See* Docket, *generally*).

During the July 29, 2024 pre-trial conference, wherein Plaintiff's counsel appeared, the trial court gave direct notice to all parties that the trial will commence due to the matter on appeal being entirely unrelated to the merits of the claim. That notice and ruling is reflected on the July 30, 2024, Order of Court. In the July 30, 2024 Order the trial court stated, inter alia, the contempt order that is on appeal does not preclude evidence, testimony, or any issues related to the jury trial, and the filing of the Notice of Appeal does not preclude the [trial court] from proceeding with the trial as scheduled. (*See* July 30, 2024 Order, attached hereto). The trial court issued a separate Order on July 30, 2024, scheduling argument on the pending Motions in Limine for August 5, 2024. (*See* Docket, *generally*).

Defendants, on August 2, 2024, filed a Motion for Sanctions for Plaintiff's Violation of Jury Trial Order, on the basis that Plaintiff failed to submit and file any required jury trial documents. (*See* Docket, *generally*).

On August 5, 2024, Plaintiff's counsel sent a letter to the trial court indicating that neither Plaintiff nor his counsel will be participating in the pre-trial proceedings or the jury trial until his Appeal on the Contempt order is resolved. The trial court directed the Plaintiff to file the letter as of record. (*See* Docketed August 5, 2024, Letter attached hereto).

The August 5, 2024, oral argument on the Motions in Limine proceeded without Plaintiff. The trial court issued an Order on August 6, 2024, reflecting that Plaintiff failed to appear, and deferred the rulings on the pending motions until the time of trial. The trial

5

court again further Ordered that the Jury Trial remains scheduled for August 7, 2024. (*See* August 6, 2024 Order, attached hereto).

On August 7, 2024, at the scheduled Jury Trial, wherein neither Plaintiff nor his counsel appeared, Defendant moved for Nonsuit pursuant to Pa. R.C.P. 218(a). By way of Order on August 7, 2024, the trial court granted Defendant's Motion for Nonsuit. (*See* August 7, 2024, Order attached hereto)

On August 19, 2024, Plaintiff files a "Motion for Post Trial Relief to Remove and Strike Judgment of Non-Suit Pursuant to Pa.R.Civ.P. 227.1 and 230.1."[1] (*See* Docket, *generally*). The Defendant filed a Response in Opposition to Plaintiff's Motion for Post Trial Relief of August 29, 2024. (*See* Docket, *generally*). The trial court scheduled oral argument on Plaintiff's submission for October 9, 2024. (*See* Docket, *generally*). On October 9, 2024, the trial court denied Plaintiff's Motion for post- trial relief. (*See* October 9, 2024 Order attached hereto). It is from the August 7, 2024 Order granting Nonsuit and October 9, 2024 Order denying post- trial relief, in which this Appeal derives.

## QUESTIONS AT ISSUE:

The Defendants filed four (4) issues, several of which are substantially the same analysis. The issues complained of on appeal are as follows:

1. **The Court's grant of the Defendant's Motion for Nonsuit pursuant to Pa.R.Civ.P. 218(a) as to the Plaintiff's cause of action was both legally erroneous and an abuse of discretion.**

2. **The trial court erred in failing to find that on Tuesday July 23, 2024, the Plaintiff filed of record a Notice of Appeal to the Pennsylvania Superior Court from the Court's Order finding Christopher Puma in contempt of court by Order dated July 3, 2024, which had been entered of record with the Prothonotary in this Court's docket**

---

[1] The ten (10) day deadline to file for post-trial relief was August 17, 2024, however that calendar date landed on a Saturday.

6

entry sheet in the above-captioned matter and that therefore, pursuant to 210 Pa. Code Rule 1701 (a), after the appeal was taken the trial court could no longer proceed further in the matter.

3. The appealability of the Court's July 3, 2024 Order directly implicated the jurisdiction of the Superior Court and the Court of Common Pleas Order did not have jurisdiction to grant the Defendant's Motion for a Non-Suit on August 7, 2024. <u>In re Estate of Considine v. Wachovia Bank</u>, 966 A.2d 1148, 1151 (Pa. Super. 2009).

4. The Court erred and abused its discretion in failing to find that upon the Plaintiff's filing of a Notice of Appeal, the Court of Common Pleas did not have jurisdiction and the trial court was no longer authorized to proceed further in the matter until it was resolved on Appeal.

## Discussion

The first issue raised on appeal is regarding the trial court's granting of nonsuit. The remaining three issues are essentially the same issue regarding the trial court's jurisdiction and authorization to move forward in the case while the Plaintiff's Appeal on the Contempt of Court was pending. As such the remaining three issues will be discussed together.

1. **The Court's grant of the Defendant's Motion for Nonsuit pursuant to Pa.R.Civ.P. 218(a) as to the Plaintiff's cause of action was both legally erroneous and an abuse of discretion.**

The first question at issue is whether granting Defendant's motion for Non-Suit was legally erroneous and an abuse of discretion. Appellate review of a non-suit is abuse of discretion or error of law standard. *Baird v. Smiley*, 169 A.3d 120, 124 (Pa. Super. 2017). An appeal form nonsuit is not ripe until after a move to remove the nonsuit has been presented to the court and denied. *Billig v. Skvarla*, 853 A.2d 1042, 1048 (Pa. Super. 2004).

7

A compulsory nonsuit at trial may be granted where the plaintiff has failed to establish a right of relief at the close of plaintiff's case. Pa. R.C.P. 230.1. Where a case is called for trial, and without satisfactory excuse a plaintiff is not ready, the court may enter a nonsuit on motion of the defendant or a non pros on the court's own motion. Pa. R.C.P. 218(a). A party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse. Pa. R.C.P. 218(c).

Here, the trial court made the Plaintiff aware, multiple times, that trial in the matter still scheduled and moving forward, as the issue on appeal was collateral and wholly unrelated to any issue or merits of the case. (*See* July 30, 2024 Order attached hereto; *See also* August 5, 2024, Order attached hereto). Plaintiff not only received notice of and acknowledged that trial was to commence but blatantly advised the trial court that neither Plaintiff nor his counsel will be attending any pre-trial proceedings or the jury trial. (*See* Docketed August 4, 2024, Letter attached hereto).

Accordingly, upon Plaintiff and Plaintiff's counsel failure to appear at trial, Defendant moved for a nonsuit, which was granted by the trial court. (*See* Docket, *generally*). Granting nonsuit for the failure of Plaintiff to appear at trial is expressly permitted by the rules of civil procedure. Pa. R.C.P. 218(c); Pa. R.C.P. 230.1. Therefore, the trial court did not commit an error of law, nor an abuse of discretion in granting a nonsuit when Plaintiff clearly abandoned his trial after given multiple notices that the case would still be called on August 7, 2024. (*See* July 30, 2024 Order attached hereto; *See also* August 5, 2024, Order attached hereto).

Questions at issue numbers two, three, and four are all related to the trial court's jurisdiction and authorization to move forward on the case while Plaintiff's Order of Contempt is on Appeal with the Superior Court. As such, they will be addressed together.

2. **The trial court erred in failing to find that on Tuesday July 23, 2024, the Plaintiff filed of record a Notice of Appeal to the Pennsylvania Superior Court from the Court's Order finding Christopher Puma in contempt of court by Order dated July 3, 2024, which had been entered of record with the Prothonotary in this Court's docket entry sheet in the above-captioned matter and that therefore, pursuant to 210 Pa. Code Rule 1701 (a), after the appeal was taken the trial court could no longer proceed further in the matter.**

3. **The appealability of the Court's July 3, 2024 Order directly implicated the jurisdiction of the Superior Court and the Court of Common Pleas Order did not have jurisdiction to grant the Defendant's Motion for a Non-Suit on August 7, 2024. In re Estate of Considine v. Wachovia Bank, 966 A.2d 1148, 1151 (Pa. Super. 2009).**

4. **The Court erred and abused its discretion in failing to find that upon the Plaintiff's filing of a Notice of Appeal, the Court of Common Pleas did not have jurisdiction and the trial court was no longer authorized to proceed further in the matter until it was resolved on Appeal.**

The Plaintiff premises the bulk of his Appeal in this matter on the contention that due to his Notice of Appeal regarding the Order of Contempt that was issued earlier in litigation, prevented the trial court from having jurisdiction to continue proceedings in the instant case. The Order the Plaintiff was then appealing, was an Order of Contempt, which was solely monetary in nature. (*See* July 3, 2024 Order of Contempt). The procedural history regarding the Contempt Order is thoroughly laid out in the Opinion filed November 6, 2024. (*See* Docket, *generally*). Put succinctly, Plaintiff was sanctioned for failing to abide by discovery orders. (*See* Docket, *generally*). Namely, Plaintiff was compelled to provide dates of availability to be deposed and furnish discovery responses. (*See* Docket,

9

*generally*). Upon Plaintiff's failure to do so, despite Court Orders compelling same, Plaintiff was sanctioned in monetary nature only. (*See* February 1, 2024 Order).

Upon failure to pay the monetary sanction, Defendants filed a Motion for Contempt and Sanctions. (*See* Docket, *generally*). The trial court held a hearing, considered all submissions, and subsequently issued an Order finding Plaintiff in contempt of court for willfully failing to pay the sanctioned amount. (*See* July 3, 2024 Order hereinafter referred to as the "Order of Contempt"). In the Order of Contempt, the trial court again ordered the monetary sanctions to be paid as well as an additional $500.00 in attorney's fees for the opposing party. (*See* July 3, 2024 Order).

The Plaintiff eventually filed a Notice of Appeal as to the Order of Contempt, wherein that Appeal remains ongoing. (*See* Docket, *generally*). The Order of Contempt does not relate to any issues that would be considered in the trial. The Order of Contempt did not preclude evidence, testimony, or sanction Plaintiff in any way that would potentially affect how the Plaintiff would present the case on the merits of his claims. The issues in the Order of Contempt are wholly separate and apart for the merits of the case at hand. (*See* Docket, *generally*).

Indeed Pennsylvania Rule of Appellate Procedure 1701(a) states:

> (a) General rule. – Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

Pa. R.A.P. 1701(a).

However, Plaintiff fails to acknowledge the "otherwise prescribed by these rule" limitations that are set out specifically in Pa. R.A.P. 1701(c). In fact, Pa. R.A.P. 1701(c)

10

specifically addresses appeals that are wholly separate and apart from the merits of the case. Pa. R.A.P. 1701 goes on to state in relevant part:

> (c) **Limited to matters in dispute.**—Where only a particular item, claim, or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim, or assessment, unless otherwise ordered by the trial court or government unit or by the appellate court or judge thereof as necessary to preserve the rights of the appellant.

Pa. R.A.P. 1701(c).

The Plaintiff cites 210 Pa. Code Rule 1701(a) and In Re Estate of Considine v. Wachovia Bank, 966 A.2d 1148, 1151 (Pa. Super 2009), in support of his contention that the trial court no longer had jurisdiction to continue on the matter after his Notice of Appeal was filed regarding the Order of Contempt. However, the rules of appellate procedure direct otherwise, as does the caselaw in our Commonwealth.

The Supreme Court of Pennsylvania stated, "[t]he purpose of Rule 1701(c) is to prevent appeals of collateral issues from delaying the resolution of the basic issues where the proceeding below can continue without prejudicing the rights of the party seeking the interim." *Rosen v. Rosen*, 520 Pa. 19, 24, 549 A.2d 561, 564 (1988). Similarly in this case, as in *Rosen v. Rosen,* nowhere is it contended that the resolution of the merits in Plaintiff's case is impinged upon the merits on the Order of Contempt Appeal. *Id.* Just as the underlying court did in Rosen, the trial court here proceeded in the case pursuant to Pa. R.A.P. 1701(c). (*See* July 30, 2024 Order attached hereto). The trial court's July 30, 2024 Order specifically states:

11

10. Plaintiff maintains that the jury trial must be continued due to the contempt appeal and that the trial court lacks jurisdiction based upon the filing of the appeal.

11. The contempt order on appeal does not preclude evidence, testimony, or any issue related to the jury trial.

12. The contempt order on appeal simply orders counsel fees in a sum certain that are due after the date of the jury trial.

13. The Court finds that the filing of Plaintiff's Notice of Appeal does not preclude this Court from proceeding with the trial as scheduled. See Pa.R.A.P 1701(c).

(*See* July 30, 2024 Order attached hereto).

In regard to Plaintiff citing *In Re Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa. Super 2009) in support of his position, that case the Superior Court quashed an appeal after discussing the appealability of various matters, due to that specific order not being a final order. We could only presume Plaintiff is pointing to the proposition that "the appealability of an order directly implicates the jurisdiction of the court asked to review the order," to support that such jurisdiction would extend to any other matter arising from the case being reviewed. However, that is not what is stated. That statement was made in reference to the Superior Court having jurisdiction to inquire whether an order before them is appealable. *In Re Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa. Super 2009). That issue was never raised nor did the trial court challenge the appealability of the Order of Contempt.

12

Regardless of Plaintiff's Appeal of the Order of Contempt, due to its collateral nature, it does not prevent the trial court from proceeding on the case when the issues are unrelated from the merits of the claims before the trial court. Pa. R.A.P. 1701(c).


**End of Opinion**